# NAOMI JOSEPH, Plaintiff
## v.
# SHUAMA SERVICE CENTER, and SPEEDY GAS, INC., Defendants

Case No. SX-03-CV-392

Superior Court of the Virgin Islands

Division of St. Croix

November 2, 2006

VINCENT A. COLIANNI II, ESQ., ELIZABETH A. KLIESCH, ESQ., Colianni & Colianni, St. Croix, U.S. Virgin Islands, *Attorneys for the Plaintiff.*

KEVIN L. KELLER, ESQ., PATRICK D. BLAKE, ESQ., Willcox & Savage, P.C., Norfolk, Virginia, *Attorneys for the Defendants.*

BRADY, *Superior Court Judge*

## MEMORANDUM OPINION AND ORDER

(November 2, 2006)

THIS MATTER is before the Court on a Motion for Summary Judgment by Defendants Shuama Service Center, Inc., and Speedy Gas, Inc. ("Defendants"), and the opposition thereto by Plaintiff Naomi Joseph ("Plaintiff"). The record does not reflect that there is a genuine issue of material fact for a jury to consider under the RESTATEMENT (SECOND) OF TORTS §§ 343 or 344 (1965). Accordingly, and for the following reasons, Defendants' Motion for Summary Judgment is granted.

### Background

Plaintiff, Naomi Joseph, alleges in her Complaint that on June 24, 2003, she slipped and fell in a puddle of gasoline at the Shuama Service Station, which was operated by Defendants. Ms. Joseph further alleges that Defendants were negligent in failing to inspect and maintain the premises in a safe condition for their customers, and in failing to warn of the dangerous condition created by the gasoline.

Photographs in the record show that the service station is not very large. The station's two service pump areas are approximately 20 to 25 feet apart and the distance from the front door of the station store to the vicinity of the service pumps is approximately 5-10 feet. The distance from the front door of the station store to the end of the station property is approximately 150-200 feet.

## Procedural History

This matter came before the court for hearing on September 15, 2006. Defense counsel, Kevin L. Keller, Esq., responded on behalf of Shuama Service Center, Inc. Defense counsel informed the Court of his belief that there is no tort present in this case, and that the case is therefore ripe for Summary Judgment. Plaintiff was represented by Vincent A. Collianni II, Esq. and Elizabeth Kliesch, Esq. Plaintiff's counsel recited their version of the facts, supported by the record. Plaintiff's counsel argued that Defendants did not take adequate procedures to ensure the safety of customers, and that there is sufficient evidence from which a reasonable jury could find Defendants liable based on legal theories predicated upon the RESTATEMENT (SECOND) OF TORTS §§ 343 and 344. Defendants' counsel countered that Plaintiff has not shown causation.

## Discussion

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the Court shall grant a motion for Summary Judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The purpose of the Summary Judgment procedure is "to pierce the pleadings and to assess the proof in order to see whether there [is] a genuine need for trial." *LaFrance Equipment International Corp. v. Reed,* 20 V.I. 111, 113-115 (Terr. Ct. 1983). Issues of fact are only genuine where the evidence would allow a reasonable jury to return a verdict in favor of a non-moving party. *Logan v. Abramson Enter., Inc.,* 30 V.I. 72 (D.C.V.I. 1994). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The Supreme Court mandates that a motion for Summary Judgment must be granted unless the party opposing the motion demonstrates "that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

In the instant case, Plaintiff relies upon the Restatement (Second) of Torts to establish a prima facie case in support of her claim for damages. For the reasons outlined below, based upon the record, it can only be

concluded that there are no genuine issues of material fact upon which a reasonable jury could return a verdict in favor of the Plaintiff, who is the non-moving party in this request for Summary Judgment.

In opposing the Motion for Summary Judgment, Plaintiff relies upon the RESTATEMENT (SECOND) OF TORTS § 343, which reads in pertinent part:

> A possessor of land is subject to liability for bodily harm caused to business visitors by a natural or artificial condition thereon if, but only if, he (a) knows, or by the exercise of reasonable care could discover, the condition which, if known to him, he should realize as involving an unreasonable risk to them ...

The record in this instance does not reflect that anyone affiliated with Shuama Service Station had prior knowledge of the spill that caused Plaintiff's fall. To the contrary, the record indicates that both the owner of the property and the manager of the service station said they observed the area where Plaintiff slipped minutes before her fall and saw nothing slippery in the area where Plaintiff's fall occurred (deposition of Mr. Frank D'Abreu, page 20, lines 6-8; deposition of Mr. Safi Yusuf, page 27, lines 17-20). Additionally, the record reflects that Mr. Safi Yusuf, one of the owners of the service station, or one of his employees, sweeps and cleans the area where the gas pumps are located on a daily basis. Mr. Yusuf also frequently walks back and forth between the inside and outside of the store, on the lookout for foreign substances on the ground, and cleans up any that are present. Prior to the Plaintiff's fall, Mr. Yusuf had personally done one or two complete walk-throughs of the outside area. (Deposition of Safi Yusef, page 18, lines 5-22).

It is also undisputed that Mr. Frank D'Abreu, the owner of the property where the Shuama Service Station is located, leased the property to Defendants, and was at the Shuama Service Station pumping gas into his car around the time of Plaintiff's fall. Mr. D'Abreu, the former operator of this service station, was in the habit of inspecting the ground of the station whenever he was present. Mr. D'Abreu was at the service station refueling his Mercedes for less than five minutes. During that time, he inspected the ground and saw nothing (deposition of Frank D'Abreu, page 15, lines 1-4). The Plaintiff indicates that Mr. D'Abreu and his car were present on the premises minutes before her fall

119

(deposition of Naomi Joseph, page 53, lines 5-14, 22-25). Later, in Plaintiff's deposition is the following exchange:

Q: What evidence do you have that they had not properly maintained the premises?

A: If that owner/manager whatever he was and is, if he was paying attention to his business and not the Mercedes Benz, he would have seen the substance on the ground and would have done what he did after I fell which was put the sand on it. (Deposition of Naomi Joseph at page 75, lines 1-7).

Although the above response by Plaintiff amounts to mere speculation and conjecture regarding the intentions and actions of the owner/manager with regard to his observation of the area where the spill occurred prior to Ms. Joseph's fall, her testimony confirms that Mr. D'Abreu was indeed present on the premises immediately prior to Plaintiff's fall.

Mr. D'Abreu, the property owner, and owner of the Mercedes seen by the Plaintiff in the above caption, stated that he had been at the service station "... not even a good five minutes." See deposition of Mr. Frank D'Abreu, page 18, lines 17-18. Plaintiff's examination of Mr. D'Abreu generated the following evidence:

Q: (Mr. Colianni) You said you were there —

A: I was there. I was there before with the yellow car. I see nothing on the ground. I came back with the black car, I see nothing on the ground.

Q: Okay. Did you inspect the area when you came back?

A: Well, I usually drive in — when I'm driving in, I'm driving in to the two pumps where it has two sets of pumps here and two sets of pumps here (indicating). And when I drive in, I do like this (indicating). And I see nothing on the ground. You know, gas, oil shines. Whether it's dark or not, it shines, and you can see something on the ground. (Deposition of Mr. Frank D'Abreu at page 20, lines 5-17).

The cross examination of one of the owners of Defendant Speedy Gas, Safi Yusef in a deposition produced the following colloquy:

120

Q: And did you know or had you at any time prior to Ms. Joseph falling actually seen gasoline on the floor that day — that morning?

A: No. (Deposition of Safi Yusef, at page 27, lines 20-21).

The defense's statements about diligence in surveying the premises and lack of awareness of the spill is left unchallenged by any direct evidence in the record. Moreover, the allegation of the Defendants' lack of awareness, and therefore lack of notice of the spill's existence, is actually corroborated by Plaintiff, who indicated in her deposition testimony that she did not observe the spill during the minutes prior to her fall, and could not conceive of how either the Mercedes owner or station owner would have been able to do so either. The following dialogue was recorded during Plaintiff's deposition at pages 79-80, lines 15-25 and 1-17:

Q: OK. You said that you had no idea how long the gasoline was on the floor; is that correct?

A: True.

Q: Do you have any information that anybody at SHUAMA, including the owner or anyone inside, had any knowledge that the gasoline was indeed on the floor before you fell?

A: I didn't speak to anyone inside the store. The only individuals that I know for sure saw me falling there was there, was the owner [Yusef], the owner of the car, [D'Abreu] and Harvey[1] so, no, I don't know.

Q: You don't know whether —

A: Whether anybody inside would have had regarding the length of time the gas was on the ground.

Q: Well, more than opinion. Do you have any knowledge that—

A: No knowledge.

Q: Okay.

A: I can't see how, but —

Q: You can't see how what?

A: How they would know how long it's been there. And if they know —

---

[1] Police lieutenant William Harvey, who was Plaintiffs partner on that day on routine motor patrol.

121

Q: Not even — not even how long it's been there, but do you have any knowledge that they knew it was indeed there before you fell?
A: No.[2]

■ Since the record reflects that Defendants did not know about the specific spill alleged to have caused Plaintiff's fall for any period of time prior to its occurrence, whether reasonable or inordinate, there could not have been any notice of the spill, whether actual or constructive to the Defendant. Without notice, part (a) of § 344 of the Restatement cannot be met and Plaintiff's argument fails.

Plaintiff makes an additional argument in support of her claim using § 344 of the Restatement, which reads:

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it.

In the present instance, the management of the Shuama Service Center did not have a system of inspection in place whereby the premises would be monitored on a regularly scheduled basis for purposes of discovering or avoiding leaks and spills. However, it is undisputed in the record that minutes prior to Plaintiff's fall, both the owner and manager of the service station observed nothing on the ground where Plaintiff fell. Though it may be possible for this Court to determine whether, in this instance, prior observation of the area where the fall took place constitutes "reasonable care to discover ... accidental, negligent or intentionally harmful acts that may have occurred," as is mandated by part (a) above, it is not possible, in this instance, for any court or jury to determine the cause of the act that caused the harm. The parties

---

[2] This Court takes note of the extraordinary and commendable candor of the Plaintiff in her deposition.

themselves in this matter are unaware of how the spill occurred, as the record reflects. There being no proof by either of the litigants regarding how the spill came into being, there can also be no factual circumstance concerning the spill from which a jury could reach conclusions regarding negligence.

With regard to part (b) of this section's requirement for an adequate warning, the record reflects the existence of signage on the premises warning members of the public to be vigilant in order to avoid possible harm. There is no disputing that signs were posted on the premises of the service station, and that these signs were posted where they could be seen. However, whether such signage is found to be adequate or inadequate, there is still the more fundamental question of causation that must first be addressed before any theory of law, including the Restatement, can be discerned by a court in determining applicable law, or by a jury in finding the facts of this case.

In order to prove negligence, one has to establish (1) the existence of a duty; (2) that the duty was breached; (3) a causal connection between the breach of duty and the harm that occurred; and (4) the resultant damage or harm. The record of evidence in this case does not lend itself to determining whether there is a causal nexus between Plaintiff's harm and any negligence on the part of Defendants. Since the record reflects that none of the parties can say with any certainty how the spill appeared in the spot where Plaintiff fell, it is impossible to determine causation. Without this crucial element, Plaintiff's case fails, and as a result, there is no way that a jury could rule in favor of the Plaintiff.

The final pertinent part of section 344 which relates to this case is comment (f). Section 344 comment (f) reads:

> *f. Duty to police premises.* Since the possessor is not an insurer of the visitor's safety, he is ordinarily under no duty to exercise any care until he knows or has reason to know that the acts of the third person are occurring, or are about to occur. He may, however, know or have reason to know, from past experience, that there is a likelihood of conduct on the part of third persons in general which is likely to endanger the safety of the visitor, even though he has no reason to expect it on the part of any particular individual. If the place or character of his business, or his past experience, is such

that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection.

■ As was mentioned above, Shuama admits that though it did not have a scheduled system in place to police the premises to detect potential hazards to invitees, its representatives and agents did regularly check the premises for such things. The record reflects that persons affiliated with Shuama observed the area where Plaintiff fell minutes before the accident, and there was nothing slippery there at the time. The fact that Shuama representatives observed the area mere minutes prior to Plaintiff's fall satisfies this section's establishment of a duty to police, in this Court's opinion. Having satisfied this requirement without seeing anything slippery in the vicinity, it would be impossible for a jury to factually determine any negligence on the part of the Defendants, or, indeed, if there was contributory negligence on the part of the Plaintiff. Therefore, this Court finds that there is nothing in the facts of this case which would allow a jury to rule in either party's favor with regard to this section of the Restatement.

In support of their Summary Judgment motion, Defendants rely heavily on *Saldana v. Kmart Corp.*, 84 F. Supp. 2d 629, 42 V.I. 358 (D.C.V.I. 1999), a case which is factually very similar to this one. In that case, Plaintiff Saldana alleged that she slipped in a puddle of car wax in a Kmart aisle on St. Croix and suffered injury. No one saw the wax before Ms. Saldana fell, no one else slipped in the puddle, and Ms. Saldana did not see tracks of wax near the puddle that might indicate someone else had stepped in the spill. *Saldana v. Kmart Corp.*, 84 F. Supp. 2d 629, 42 VI 358 (D.C.V.I. 1999) at 359-360. The District Court of the Virgin Islands granted Summary Judgment, which was affirmed on appeal to the Third Circuit Court of Appeals. *Saldana v. Kmart Corp.*, 260 F.3d 228, 43 V.I. 361 (3d Cir. 2001). In its ruling, the Third Circuit Court indicated that "[b]ecause Saldana does not allege actual notice on the part of Kmart, she would ultimately be required to show that the wax was on the floor long enough to give [Kmart] constructive notice of this potential 'unreasonable risk of harm." *Id.* at 232. Here, Ms. Joseph indicates in the record that she could not see how Defendants would be able to know

how long the spill was on the ground. Ms. Joseph at no time alleges that Defendants knew about the spill, and Defendants contend that they did not in fact know about the spill until after Ms. Joseph slipped and fell.

The District Court in *Saldana* said that "the mere presence of the foreign substance does not establish whether it had been there a few seconds, a few minutes, a few hours or even a few days before the accident." *Saldana v. Kmart Corp.*, 84 F. Supp. 2d 629, 42 VI 358, 360 (D.C.V.I. 1999) (quoting *David v. Pueblo Supermkt.*, 740 F.2d 230, 233-234 (3d Cir. 1984). The *Saldana* case stands for the proposition that a Defendant must have actual notice of a specific spill for a reasonable period of time in advance, if that spill causes harm to an invitee, in order for Defendant to be found negligent for breaching any duty to warn or protect invitees from any harm stemming from that spill. In *Saldana* the Appellate Court declared: "[c]ircumstantial evidence that a substance was left on the floor for an inordinate period of time can be enough to constitute negligence; where a Plaintiff points to such evidence, it is a question of fact for the jury ..." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232, 43 V.I. 361 (3d Cir. 2001).

In the instant matter, it cannot be said that the period of time the spill was on the ground at the Shuama station was inordinate for two reasons: first, neither party is aware of precisely when the spill came into being, and second, though the parties are unaware of the specific time the spill came into being, the window of opportunity for the spill to have occurred was mere seconds or minutes prior to Plaintiff's fall. It is therefore impossible to draw the conclusion that the operators of the Shuama service station knew or should have known of the dangerous condition but failed to take reasonable steps to correct it. In the words of the Appellate Court in *Saldana*, the Plaintiff "must point to evidence that would allow the jury to infer that the wax was on Kmart's floor for some minimum amount of time before the accident. Only then could a jury begin to consider whether under the circumstances the amount of time indicated by the evidence establishes constructive notice." *Id.* at 232. Ms. Saldana was unable to establish that minimum amount of time before her accident, and Ms. Joseph is unable to do so as well.

The Appellate Court in *Saldana* cited an example, taken from the RESTATEMENT (SECOND) OF TORTS § 328D:

A, a customer in B's store, slips on a banana peel near the door, and falls and is injured ... there is no evidence as to how long it has been on the floor. Since it is at least equally probable that it was dropped by a third person so short a time before that B had no reasonable opportunity to discover and remove it, it cannot be inferred that its presence was due to the negligence of B.

In affirming the District Court's grant of Summary Judgment in *Saldana,* the Court of Appeals for the Third Circuit agreed with the lower court's conclusion that the spill/duration tests proffered by the Plaintiff were unreliable and irrelevant. The three judge panel expressed its evaluation of the state of the evidence:

We, therefore, find that Saldana's case rests solely on speculation that the events unfolded in such a way as to render Kmart negligent. There was a complete absence of relevant evidence—from either side—on the critical question of how long the wax was on the floor, and the mere possibility that something occurred in a particular way is not enough, as a matter of law, for a jury to find it probably happened that way. *Saldana v. Kmart Corp.*, 260 F.3d 228, 234, 43 V.I. 361 (3d Cir. 2001).

This Court finds the facts here indistinguishable from the Restatement example or from either of the published opinions in *Saldana.* While a Plaintiff need not prove his or her case by a preponderance of the evidence to survive Summary Judgment, the Plaintiff here has not met even her modest burden of showing at least some relevant evidence that could support her claim. Accordingly, it is hereby

**ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED.**